IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

----------------------------------------------------- :
WADE HUFFMAN, et al., : CASE NO. 1:13 CV 00827
 :
 Plaintiffs, : MEMORANDUM OF OPINION AND
 : ORDER
 -vs- :
 :
 :
VILLAGE OF NEWBURGH HEIGHTS, :
et al., :
 :
 Defendants.
-----------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Before the Court is a motion for summary judgment filed by the defendants Village of Newburgh Heights ("Newburgh Heights"), Patrolman Bob Hoover ("Patrolman Hoover" or "the officer"), and Chief of Police Gabriel Barone ("Chief Barone"). The plaintiffs Wade Huffman, Marie Jessica Huffman, and Alan Bowles have filed a brief in opposition. For the reasons that follow, the motion will be granted as to the plaintiffs'

federal constitutional claim. Because this decision will dispose of the only claim over which the Court has original jurisdiction, the plaintiffs' state law claims will be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c).

## I. Background

Except where noted, the facts are not in dispute. On 5 March 2011, Patrolman Hoover of the Newburgh Heights police department was on duty. Shortly after 6:00 p.m., while operating a marked police vehicle, Patrolman Hoover was notified by Newburgh Heights 911 emergency dispatch of a possible child abduction.[1] The 911

---

[1] The plaintiffs provide the following transcript of the call with Newburgh Heights dispatch:

| | |
|---|---|
| Dispatcher: | Newburgh Heights 911. |
| Caller: | Please I need the cops at 30 at 4607 the um it's a white truck. 4607. [sic] He's leaving, he's leaving in the truck now. |
| Dispatcher: | What did he do? |
| Caller: | He's leaving. |
| Caller: | He has my niece. |
| Caller: | He's leaving right now he's going off of Gamma Rd. |
| Caller: | Off of Gamma. |
| Caller: | Off of Gamma. |
| Caller: | He's leaving right now. |
| Caller: | He's leaving. |
| Caller: | He's going toward Fleet. |
| Caller: | He's going toward Fleet. |
| Dispatcher: | I have a female on the phone something about a white truck from Gamma avenue Washington Park Blvd towards Fleet. He's got a child with him that he's not supposed to have. |
| Dispatcher: | I also have a Report 77 northbound, North of Harvard a vehicle is up on the ramp. |
| 943: | 943 I am attempting to stop that vehicle we're East 49th northbound approaching Fleet. Edward Queen Lincoln 7063. |
| Dispatcher: | Copy standby for one second. |
| 1618: | Did he stop? |
| 943: | Negative. We're still going. We're on the overpass now. |
| 1618: | 77 North I'm at the bottom of the Fleet on ramp. |
| Dispatcher: | You want me to notify Cleveland? |
| 943: | That's affirmative 943. Are you saying there was a child on board? |

2

dispatcher had received a call from a woman frantically explaining that a man in a white truck had taken her niece. (See doc. 14). She reported that the vehicle was leaving the caller's location on Gamma Road.

At that time, Patrolman Hoover was driving north on East 49th St, and he observed a white sport utility vehicle ("the suspect vehicle"), traveling at a high rate of speed, turn onto East 49th Street from Gamma Road. According to the defendants, Patrolman Hoover activated his overhead lights and siren to signal the driver of the suspect vehicle to stop.[2] He notified the 911 dispatcher that he had located the suspect vehicle and that he was attempting to stop it. The vehicle did not stop, however, but continued north on East 49th Street to Fleet Avenue. The officer followed as the vehicle turned onto Fleet heading eastbound.

The suspect vehicle stopped at a red light on the Fleet Avenue bridge over Interstate 77, and the officer pulled up behind it. When the light turned green, the suspect vehicle accelerated and pulled to the left around the traffic. Patrolman Hoover followed, and he sought confirmation from dispatch as to whether there was a child in the car. The dispatcher indicated that there was, apparently, since the caller reported:

| | |
|---|---|
| Dispatcher: | Apparently our caller hung up. She was screaming "he got my niece, he's got my niece" all I know it was a white truck and ah I was trying to get a callback number for her. [sic] Let me get Cleveland. |
| 943: | He's being erratic we're at speeds of 70. Do you want to call it or is there a child? |
| 943: | Repeat advise he just wrecked. We're going to be at East 55th. |

(Doc. 17, pp. 2-3; see also Doc. 14).

[2]  As discussed in the section that follows, see infra, pp. 9-10, it is not clear precisely when, or even if, both the overhead lights and the siren were activated.

3

"he's got my niece, he's got my niece," before she hung up. The suspect vehicle continued to accelerate, approaching seventy miles per hour. The posted speed limit was twenty-five miles per hour. The officer followed, but he claims to have slowed his vehicle hoping that the suspect also might reduce his speed. The suspect vehicle continued at a high rate of speed and attempted a right turn at East 65th street, but the driver lost control. The vehicle flipped over, and it struck an RTA bus shelter on the sidewalk. The chase had lasted no more than two minutes. After a foot pursuit, the driver of the vehicle, Russell H. Roupe, Jr., was apprehended. The vehicle was searched, but no child was found inside.

      The plaintiffs Wade Huffman and Alan Bowles were in the RTA bus shelter that was struck by the suspect vehicle. According to the plaintiffs, after initially being pronounced DOA at the hospital, Mr. Huffman survived and spent five days in intensive care. Counsel says that Mr. Huffman's physical injuries included a fracture of the right hand, a chipped bone in the right wrist, a depressed skull fracture, and fractures around his nose. In addition, it is claimed that fragments of Mr. Huffman's skull punctured his brain. Mr. Huffman's treatment allegedly included replacement of facial tissue with stomach tissue; sixty-six staples in his head; seventeen stiches on his face; and a plate in his head. Since the incident, Mr. Huffman allegedly suffers from short term memory loss, seizures, headaches, and a short-temper. Plaintiff Bowles suffered unspecified injuries.

4

Plaintiffs brought this lawsuit alleging that Patrolman Hoover, Chief Gabriel Barone, the Village of Newburgh Heights, and Mr. Roupe[3] are liable for their injuries. Mr. Huffman and Mr. Bowles allege, *inter alia*, that the defendants negligently, recklessly, willfully, and wantonly caused injury to them by initiating and continuing the pursuit of the suspect vehicle; that Chief Barone and the Village of Newburgh Heights negligently, willfully, recklessly, and wantonly hired and trained Patrolman Hoover; and that Chief Barone and the Village of Newburgh Heights negligently, willfully, recklessly, and wantonly failed to supervise and train officers in handling pursuit situations. Mr. Huffman and Mr. Bowles further allege, pursuant to 42 U.S.C. § 1983, that their substantive due process rights were violated as a result of the municipal defendants' actions. Ms. Huffman alleges a claim for loss of consortium, and the plaintiffs bring state law tort claims against Mr. Roupe.

In support of their claims against the municipal defendants, the plaintiffs supply evidence, in short, that when Chief Barone was hired, the Newburgh Heights police department was fragmented, without supervision, and without leadership; that Newburgh Heights had not implemented any training program for conducting pursuits; and that Patrolman Hoover did not receive and could not recall receiving any training with regard to properly conducting a pursuit. The plaintiffs also supply evidence that Patrolman Hoover was disciplined, and ultimately terminated in September 2011, for numerous instances of insubordination.

---

[3] The docket reflects that Mr. Roupe is unrepresented by counsel and that he has not been served with a copy of the summons and the complaint.

The defendants maintain, however, that the plaintiffs' federal constitutional claim fails as a matter of law because the plaintiffs fail to provide any evidence that Patrolman Hoover's initiation and continuation of the pursuit "shocks the conscience" and so violated the plaintiffs' substantive due process rights. The defendants argue that Chief Barone is not constitutionally liable because the plaintiffs provide no evidence that he was actively involved in unconstitutional conduct. And, in the absence of an underlying constitutional violation, the defendants argue, Newburgh Heights cannot be liable pursuant to Monell v. New York Dept. Of Soc. Servs., 436 U.S. 658 (1978). The defendants further argue that they are entitled to statutory immunity under R.C. § 2744 with respect to the plaintiffs' remaining, state law claims. The issues are briefed, and the defendants' motion is ripe for decision.

## II.

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)).

To prevail on a section 1983 claim, a plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." Smoak v. Hall, 460 F.3d 768, 777 (6th Cir. 2006) (citing Waters v. City of Morristown, 242 F.3d 353, 358-59 (6th Cir. 2001)). A defendant may assert "the

6

defense of qualified immunity, which shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "In qualified immunity cases, the plaintiff bears this burden; he must show that the defendant is not entitled to qualified immunity." Wysong v. City of Heath, 260 Fed.Appx. 848, 852 (6th Cir. 2008) (citing Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991)).

When determining whether the allegedly injured party has met this burden, the Court "typically employs a two-step analysis," asking: "'(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" Smoak, 460 F.3d at 777 (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005)). The Court may consider these questions "in whatever order is appropriate in light of the issues before [it]." Moldowan v. City of Warren, 570 F.3d 698, 720 (6th Cir. 2009).

Here, the Court begins with the first step. The constitutional standard applicable in the present case is set forth in County of Sacramento v. Lewis, 523 U.S. 833 (1998). The facts of Lewis involved a police chase of a motorcycle whose rider ignored the officer's commands to stop. The police followed closely as the operator of the motorcycle, along with his passenger, reached speeds up to one hundred miles per hour. When the operator of the motorcycle attempted to turn, the motorcycle flipped over suddenly, and both the operator and the passenger were thrown from the motorcycle. Unable to slow down in time, the pursuing police officer struck the passenger with his cruiser, killing him. Id. at 836-37.

The passenger's estate brought a § 1983 claim against the officer alleging a violation of his substantive due process rights. The Supreme Court rejected the estate's claim, deciding that in the context of a police chase that causes injury, the test is whether the officer's actions "shock the conscience." The estate failed to meet the standard because it was unable to supply evidence that the officer was "motivated by an "intent to harm [the] suspects physically or to worsen their legal plight." Id. at 836. The Court reasoned that

> [a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to everyone within stopping range, be they suspects, their passengers, other drivers, or bystanders.

Id. at 853. The Court determined that the officer's conduct might have been reckless or deliberately indifferent to the well-being of the fleeing motorcyclists, but it did not rise to a level that "shocked the conscience" because:

> [The officer] was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes. [The driver's] outrageous behavior was practically instantaneous, and so was [the officer's] instinctive response. While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the driver's] lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while [the officer] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part.

Id. at 834-35.

Following Lewis, a panel of the Sixth Circuit Court of Appeals decided Meals v. City of Memphis, 493 F.3d 720 (6th Cir. 2007). In that case, an officer pursued a

8

suspect automobile without turning on her lights or siren or obtaining a supervisor's authorization to pursue, all in violation of departmental policy. Id. at 723-24. The fleeing driver collided with another car, killing two passengers and paralyzing the driver. Id. at 724. The estates of the deceased brought substantive due process claims, which survived summary judgment in district court. Id. at 725-26. On interlocutory appeal, the court of appeals reversed, after concluding that there was no evidence that the officer intended to harm the fleeing suspect. Id. at 730. The court rejected the idea that malice could be inferred from the officer's violations of departmental policy. Id.

The Sixth Circuit again addressed the issue in Jones v. Byrnes, 585 F.3d 971 (2009). In Jones, officers engaged in a high speed pursuit of a suspect vehicle whose occupants were suspected of armed robbery. Id. at 973. At some point during the pursuit, the suspect driver extinguished his headlamps in an attempt to evade the officers, and he eventually collided with an oncoming car. Id. The driver of the oncoming car was killed, and his estate sued the police officers claiming that the officers' actions violated the decedent's substantive due process rights. Id. The Sixth Circuit rejected the estate's constitutional claim, concluding that "the estate has not produced any evidence that [the officers] were acting with any intent to harm the suspects instead of trying to apprehend what they reasonably believed to be dangerous criminals." Id. at 978.

Here, in light of the above-described case law and the evidence on the record, the plaintiffs' substantive due process claim cannot survive summary judgment, since the plaintiffs have failed to provide any evidence that Patrolman Hoover intended to harm the driver of the suspect vehicle (or anyone else). The plaintiffs contend that the

9

officer "should have pulled in front of Roupe's vehicle or aborted the chase on a busy road. . . "; that the mere possibility that there was a child in the suspect vehicle makes Patrolman Hoover's conduct conscience shocking; and that the pursuit should have been aborted as soon as it was learned that a child may have been in a dangerous situation. (Doc. 17, p. 10). In the Court's view, none of these arguments demonstrate an intent on the part of Patrolman Hoover to cause harm to the driver of the suspect vehicle; rather, the plaintiff's arguments amount to little more than impermissible second-guessing of the officer's discretionary decision making.

The plaintiffs also claim that inconsistencies in the factual record preclude summary judgment. The question, as the plaintiffs see it, is whether Patrolman Hoover was pursuing the suspect vehicle with lights and sirens activated or not, and the plaintiffs point out a number of apparent contradictions in Patrolman Hoover's testimony. For instance, in his deposition, Hoover stated that he activated only his overhead lights on seeing the suspect vehicle, but in his affidavit he stated that he activated both lights and siren; and at another point in his deposition, Hoover claimed he used the siren intermittently, and elsewhere he stated that he activated his lights and siren upon receiving the call from dispatch. While the Court agrees with the plaintiffs that the facts are unclear on this particular point, it is not apparent that these discrepancies are material to the question presented. The issue here is whether the record contains evidence of Hoover's intent to harm the suspect. When and whether Hoover's lights and siren were activated does not bear on this question. As described above, the Sixth Circuit faced a similar issue in Meals, where the defendant officer pursued a suspect without authorization and without activating lights and siren. Meals,

10

493 F.3d at 730-31. In that case, the court concluded that these violations of departmental policy did not demonstrate an intent to harm, and it concluded that the officer's actions did not rise to the level of conscience-shocking. Id.

The plaintiffs also maintain that summary judgment is inappropriate because there is evidence that Patrolman Hoover was not in command of all the facts when he made the decision to pursue the suspect vehicle. The plaintiffs point to evidence that Patrolman Hoover continued his pursuit on the belief that there was a child in the suspect vehicle, even though he was not certain whether this was the case. The plaintiffs contend this demonstrates poor judgment on the part of the officer. Assuming the plaintiff's characterization is correct, the Court is unconvinced that this evidence demonstrates an intent to harm on the part of Patrolman Hoover. In the Court's view, Patrolman Hoover was faced with the difficult decision of whether to pursue an individual whom he reasonably believed committed a crime and who was evading the officer's attempts to stop him. The evidence paints a picture of a quickly developing situation that reached a climax in under two minutes. While the officer might have chosen differently, it is not apparent, based on the evidence, that the decision he made arose from any improper or malicious motive.

In sum, the Court concludes that the plaintiffs have failed to supply any evidence that Patrolman Hoover violated their constitutional rights when he initiated and continued his pursuit of the suspect vehicle. Patrolman Hoover is accordingly entitled to qualified immunity on this claim. The plaintiffs' constitutional claim against Chief Barone also fails as a matter of law, since the plaintiffs fail to set forth facts showing that he was actively engaged in unconstitutional behavior. See Gregory v. City of Louisville,

444 F.3d 725, 751 (6th Cir. 2006). Further, because there is no evidence of an underlying constitutional violation, the plaintiffs' Monell claim against the City of Newburgh Heights fails as a matter of law. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Summary judgment will accordingly be granted in favor of all defendants as to the plaintiffs' substantive due process claim.

When, as here, the Court disposes of all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims. See 28 U.S.C. § 1367(c). City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). The Sixth Circuit has held that "[w]hen all federal law claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims ...." Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1255 (6th Cir.1996). Such is the case here. Having considered the relevant factors, the Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims, which will accordingly be dismissed.

**III.**

For the reasons stated above, the defendants' motion for summary judgment is granted in part, specifically as to the plaintiffs' substantive due process claims. The remainder of the plaintiffs' claims are dismissed without prejudice.

IT IS SO ORDERED.

    /s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date:  27 July 2015